# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

### CASE NO:

DAVID ULERY, individually and
on behalf of all others similarly situated,

      Plaintiff,

      v.

INSURANCE SUPERMARKET, INC.

      Defendant.

_____/

## CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, DAVID ULERY (hereinafter "Plaintiff"), brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure against Defendant, INSURANCE SUPERMARKET, INC. ("INSURANCE SUPERMARKET" or "Defendant") for its violations of the Telephone Consumer Protection Act, 47 U.S.C. 227 (hereinafter "the TCPA"), and the regulations promulgated thereunder. In support, Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendant in negligently or willfully contacting Plaintiff on Plaintiff's cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), including for playing prerecorded messages during autodialed calls to Plaintiff and others, thereby invading Plaintiff's privacy. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and

experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

2.      While promoting and selling its services, Defendant and/or its agents placed thousands of nonconsensual automated or prerecorded calls to consumers' telephone numbers nationwide using an automatic telephone dialing system in violation of the TCPA.

3.      Plaintiff and each Class Member received unwanted telephone robocalls from Defendant without proper regard to the TCPA, the Do-Not-Call Rules, and in disregard for individual privacy. Plaintiff and Class Members' phone numbers were registered with the National Do-Not-Call Registry.  This lawsuit challenges all calls that were sent by Defendant to Plaintiff and Class Members from approximately February 2019, through the date of preliminary approval of class certification.

4.      "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the [FCC]."[1] Unwanted calls are the number one consumer complaint to the Commission.[2]

5.       The TCPA is designed to protect consumer privacy by, among other things, prohibiting the making of autodialed or prerecorded-voice calls to cell phone numbers and failing to institute appropriate do-not-call procedures. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(d).

6.      The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints

---

1.      *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, ¶ 1 (2015).
2.      *Rep. to Cong. on Caller Id Authentication Implementation Progress*, 2020 WL 7863050, at *1 (OHMSV Dec. 29, 2020)

about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 744 (2012).

7.      Additionally, the FCC has explicitly stated that the TCPA's prohibition on automatic telephone dialing systems "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." U.S.C.A. Const. Amend. 5; Telephone Consumer Protection Act of 1991, § 3(a), 47 U.S.C. § 227(b)(1)(A)(iii). *Kramer v. Autobytel, Inc.,* 759 F. Supp. 2d 1165 (N.D. Cal. 2010).

8.      In enacting the TCPA, Congress intended to give consumers a choice as to how companies may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.  TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

9.      In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

**JURISDICTION AND VENUE**

10.    This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

11.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District, including Defendant's transmission of the unlawful and unwanted calls to Plaintiff in this District.

12.    Plaintiff resides in Colorado Springs, Colorado, where the subject robocalls were received, within the jurisdiction of this Court.

13.    The Court has personal jurisdiction over Defendant because it conducts business in this state, markets its services within this state, solicits consumers to purchase its products and services in this state, employs or hires persons to market and sell its products and services in this state, and has availed itself to the jurisdiction of this state by placing, either directly or through authorized agents or telemarketers, calls to Plaintiff and Class Members in this state.

**PARTIES**

14.    Plaintiff's domicile is in Colorado Springs, Colorado.

15.    Defendant INSURANCE SUPERMARKET is a Delaware company with a principal address located at 1951 Northwest 7th Avenue, #600, Miami, FL 33136. Its registered agent is Shawn Kehoe at the same address. Its CEO and founder is Alex Dudarev. INSURANCE SUPERMARKET operates a website known as insurance-supermarket.com, which describes itself as a company that provides a full range of life insurance and investment products.

4

16.    Defendant uses a common business practice of spamming consumers with unsolicited robocalls to generate leads and to sell its products and services.

17.    Defendant promotes and markets its services and products by authorizing calls to wireless phone users in violation of the TPCA.

18.    Defendant, directly, individually, jointly, and/or in concert with another, or through other persons, entities or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, assisted with, ratified, turned a blind eye to, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited calls that are the subject matter of this Complaint.

## FACTUAL ALLEGATIONS

19.    Defendant engages in the marketing, promotion, and sale, of insurance plans and products to consumers across the country.

20.    Defendant, through authorized lead generators, sales agents, vendors, and/or contractors promotes its products and services through the use of unlawful telemarketing campaigns.

21.    To increase the sales volume and profits of their products and services, Defendant and/or its authorized brokers, sub-brokers, and/or sales agents, repeatedly called thousands of consumers using a prerecorded and/or artificial voice in violation of the TCPA.

22.     Plaintiff knows the calls were prerecorded and/or used an artificial voice because the distinct nature of the voice was clearly from a recording and after the recorded voice ended the calls were eventually transferred to a live person.

23.    The prerecorded robocalls sounded the same and had the same or substantially similar message.

5

24.     Plaintiff received at least 15 calls from Defendant, beginning on or about December 21, 2022 through January 30, 2023.

25.     Upon information and belief, the telemarketing robocalls were made using an Automatic Telephone Dialing system ("ATDS").

26.     The impersonal and generic nature of the prerecorded and artificial voice that Defendant sent to Plaintiff demonstrates that Defendant used an ATDS to send the subject calls.

27.     All the calls were received on Plaintiff's DNC registered personal Colorado cellular telephone with area code 719.

28.     On December 21, 2022 (from spoofed number 719-285-3253), after Plaintiff answered the call there was a distinct silence, followed by a rain drop or click sound. After a few more seconds of silence, Plaintiff was greeted by a prerecorded/AI voice who identified herself as "Sam from DIS/BIS Insurance." The prerecorded voice was a script offering on Final Expense and Life Insurance. The AI voice then requested personal information from Plaintiff to pre-qualify him in order to transfer him to a "specialist."

29.     On December 22, 2022, (from spoofed number 719-226-2894), Plaintiff again answered the call and heard distinct silence, followed by a rain drop or click sound, and was again greeted by the prerecorded/AI voice who identified herself as "Sam from DIS/BIS Insurance."

30.     On January 4, 2023, Plaintiff was called twice (from spoofed number 719-212-1031). Plaintiff ignored the first call but answered the second call. On the second call, Plaintiff was again greeted by the prerecorded/AI voice who identified herself as "Sam from DIS/BIS Insurance."

31.    On January 7, 2023, Plaintiff was called (from spoofed number 719-287-6816). Plaintiff was again greeted by the prerecorded/AI voice who identified herself as "Sam from DIS/BIS Insurance."

32.    On January 11, 2023, Plaintiff was called (from spoofed number 719-277-7195). Plaintiff was again greeted by the prerecorded/AI voice who identified herself as "Sam from DIS/BIS Insurance." After being transferred to a live representative, Plaintiff was asked if he was confined or in a hospital, if he had dementia, and if he can go to the bathroom and dress himself without assistance, as qualifier questions for life insurance.

33.    On January 13, 2023, Plaintiff was called (from spoofed number 520-580-9462). Plaintiff was again greeted by the prerecorded/AI voice who identified herself as "Sam from DIS/BIS Insurance." After being transferred to a live representative, he was again pitched an insurance product.

34.    On January 14, 17, 18 (3 calls), 19, and 30 (2 calls) 2023, Plaintiff received more calls from Defendant (all from different spoofed numbers), all from the prerecorded/AI voice who identified herself as "Sam from DIS/BIS Insurance."

35.    On the first January 18, 2023 call Plaintiff expressly and clearly requested that Defendant "STOP" calling him when speaking to Defendant's live representative. Plaintiff attempted to tell the Defendant to stop calling him on prior calls as well but he was disconnected by the caller when Plaintiff began to inquire about the identity of the caller.

36.    Plaintiff's and undersigned counsel's investigation has revealed that INSURANCE SUPERMARKET is the source of the calls. The live "specialist" that Plaintiff and others were eventually transferred to work for, or are otherwise employed by, INSURANCE SUPERMARKET.

37.     Through the above unsolicited phone calls, Defendant contacted Plaintiff on Plaintiff's cellular telephone regarding an unsolicited service via an ATDS, as defined by 47 U.S.C. § 227(a)(1) and prohibited by 47 U.S.C. § 227(b)(1)(A).

38.     This ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

39.     This ATDS has the capacity to store numbers and to dial numbers without human intervention.

40.     In other words, no human being physically dialed each digit of Plaintiff's and Class Members' telephone numbers – the calls were made using equipment with the capacity to dial many phone numbers in a short period of time, without human intervention.

41.     Defendant used a combination of hardware and software systems which have the capacity to generate or store random or sequential numbers or to dial sequentially or randomly in an automated fashion without human intervention.

42.     Defendant utilized the ATDS to send the subject phone calls *en masse* to Plaintiff and Class Members using an autodial function regardless of whether these individuals had provided express written consent or had registered their phone numbers on the National Do Not Call Registry.

43.     Based upon information and belief, most call recipients were sent more than one call, and Defendant lacked an adequate system for preventing autodialed or prerecorded-voice calls to phones for which they do not have consent.

44.     The content of the phone calls (selling life insurance) made to Plaintiff and the Class Members show that they were for marketing purposes and thus required Plaintiff's prior express written consent.

45.     The telephone number Defendant called was assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

46.     These calls were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

47.     Plaintiff did not provide Defendant or its agents prior consent to receive these calls to his cellular telephone; therefore, the unsolicited calls violated 47 U.S.C. § 227(b)(1).

48.     The calls made to Plaintiff and the Class Members were for the purpose of marketing, advertising, and promoting Defendants' business and services to Plaintiff.

49.     Defendant is and was aware, or should have known through the exercise of reasonable diligence, it was placing unsolicited calls to Plaintiff and other consumers without their prior consent.  Defendant has previously received consumer complaints regarding the same unlawful conduct alleged in this Complaint, yet it did not change its business practices. For example:

> "This company has *a habit of placing illegal robocalls* and then, when confronted with the evidence, tries to say it wasn't them because the person I spoke to spoke with an Asian accent and they don't have call centers in *****. Worst excuse I've ever heard. I would not trust this company with my money."

***

> "*Despite being on the Do Not Call Registry, I received a call with a spoofed number* from ***** trying to sell me life insurance. The *thief on the line thought I am a senior citizen, which makes this all the more reprehensible.* I answered his questions to see on whose behalf he was calling and was transferred to a woman (also offshore) who finally told me she was *calling for Insurance Supermarket*"

***

> "I have *caught "Insurance Supermarket Inc." making marketing calls to my cellphone numerous times*. I attempted to contact them, to ask them to stop,

9

as they are not supposed to be calling numbers on the Do Not Call list, but they have completely ignored me, and won't address the issue. *They continue to harass me* with these phone calls."

\*\*\*

*"Nuisance calls from numerous different phone numbers -- up to 12 per day including Saturdays and Sundays."*
\*\*\*

"This company's lead generation agency has been *calling me upwards of 20 times a day from \*\*\*\*\* with spoofed caller ID numbers."*

\*\*\*

"During the last six to eight months, *I have received over 60 telemarketing calls by this company's third party advertiser*. During one of the more recent calls, my husband answered, used a fake name, and managed to "play along" long enough to get the company's name and website. He actually recorded the entire call. After that, *we contacted Insurance Supermarket to get the matter resolved*."

\*\*\*

*Insurance Supermarket, \*\*\*\* aka Insurance Supermarket International, has violated the \*\*\*\* by employing Lead Generation companies to solicit the sale of final expense insurance and falsifying opt-ins* for the purposes of skirting the \*\*\*'s \*\*\*\* and the \*\*\*\*\* I have received numerous calls, from the call centers employed by ISI, after they were told not to call because my numbers are on the \*\*\*\*\* I was eventually transferred over to one of their agents and explained to them the same thing and that I, in no way, gave them expressed written permission or oral consent to contact me. After confronting ISI about the illegal; telephone calls and solicitations, they proceeded to supply me with a false opt-in . . ."[3]

50.     Plaintiff was damaged by Defendant's calls. In addition to using Plaintiff's cellular data, phone storage, and battery life, his privacy was wrongfully invaded, his seclusion was intruded upon, and Plaintiff has become understandably aggravated with having to deal with the

---

3.     Better Business Bureau, https://www.bbb.org/us/fl/miami/profile/life-insurance/insurance-supermarket-inc-0633-90606061/complaints?page=1.  (last visited February 21, 2023)

frustration of repeated, unwanted, harassing, time consuming, and nuisance phone calls, forcing him to divert attention away from his personal time, homelife, and work, and causing disruption to his work, sleep, and other activities. The calls are a disruptive nuisance. Not only did the receipt of the phone calls distract and take time away from Plaintiff's personal and work activities, but Plaintiff was also forced to spend significant time investigating the source calls. *See Muransky v. Godiva Chocolatier, Inc.,* 905 F.3d 1200, 1211 (11th Cir. 2018). ("[T]ime wasting is an injury in fact"…. "[A] small injury… is enough for standing purposes");*See, e.g., Mims v. Arrow Fin. Servs., Inc.*, 132 S. Ct. 740 (Jan. 18, 2012) (discussing congressional findings of consumer "outrage" as to autodialed and prerecorded calls).

51.    Class Members have similarly suffered harm. "These calls aren't just a nuisance—they add up to billions of dollars lost to fraud, undermine consumer confidence in the phone network, and harm public safety."[4]

52.    To investigate the company responsible for the unwanted, illegal and unauthorized calls to Plaintiff's personal cell phone, Plaintiff wasted time speaking with Defendant's representatives and agents and conduced independent research. But for Plaintiff's efforts, Defendant's identity would continue to be concealed.

53.    Plaintiff had no relationship with Defendant prior to these illegal phone calls and had his number registered to the National Do Not Call Registry at least 30 days prior to receiving these illegal calls, since on or about March 31, 2008.

---

[4].    *Fcc Mandates That Phone Companies Implement Caller Id Authentication to Combat Spoofed Robocalls*, 2020 WL 1634509, at *2 (OHMSV Mar. 31, 2020)

## LIABILITY FOR CALLS PLACED BY THIRD PARTIES

54.     To the extent Defendant outsourced its robocalling, it is still liable for calls that violate the TCPA.

55.     Defendant is liable for third-parties' actions because it took steps to cause the calls to be made, and because the calls were made pursuant to Defendant's actual authority, apparent authority and/or ratification, or pursuant to joint enterprise or acting in concert liability.

### Direct Liability

56.     On May 9, 2013, the FCC's Declaratory Ruling confirmed that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.
>
> *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules, 28 FCC Rcd. 6574, at ¶ 37 (2013) ("FCC 2013 Ruling"),* 28 FCC Rcd at 6588 (¶37) (internal citations omitted).

57.     Defendant is directly liable for the telemarketing calls at issue because it authorized and/or facilitated the selling of insurance products during these calls and profited off the leads and sales generated from such calls.

12

58.     Defendant has absolute control over whether, and under what circumstances, it accepts leads from potential customers.

## Agency

59.     Moreover, the *May 2013 FCC* Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call.  *Id.* at 6587 n. 107.

60.      Prior to conducting discovery, due to the anonymous nature of robocalling, Plaintiffs many times have no way to confirm and identify the exact party who called their phones. For the purposes of TCPA liability, Plaintiff is not required or expected to know this information at the pleading stage.

61.     The *May 2013 FCC* Ruling states that called parties may obtain "evidence of these kinds of relationships... through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶46).  Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶46).

62.     Here, Defendant authorized its telemarketers to generate prospective customers, and authorized those telemarketers to direct transfer those live leads to Defendant's live specialist. Defendant utilized a systematic telemarketing campaign whereby robocalls were placed in a seamless process to make it appear to Plaintiff and Class Members that Defendant wase calling

them directly, or that they were being called on Defendant's behalf, from Defendant's telemarketing department or call center.

63.    Defendant hired, permitted, and enjoyed the benefits of the mass robocalling.

64.    The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA,* CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (13) (1995).

65.    The FCC stated within their January 4, 2008 ruling, that a company on whose behalf a telephone call is made bears the ultimate responsibility for any violations.

66.    The *May 2013 FCC Ruling* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 FCC Rcd at 6586 (34). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at ¶ 46. Nevertheless, based on information and belief, Defendant does have in place a formal relationship for which both the Defendant and its lead generators/marketers derive financial and economic benefits, the extent of which will be the subject of discovery.

67.    Defendant provided at least interim instructions and day-to-day control over the actions of Defendant's agents regarding the calls.

68.    Defendant had the ability to prohibit its agents from using a pre-recorded message to contact potential customers, and to prohibit the use of calls using an ATDS and to DNC

registered numbers. *See* Restatement (Third) of Agency § 1.01 (2006) ("A principal's right to control the agent is a constant across relationships of agency")

69.     Defendant was able to restrict or specify the geographic location and/or volume of the calls. Here, Defendant specified that the calls to Plaintiff should be directed to the Colorado market.

70.     Defendant requested and sought from its telemarketers to solicit particular target customer profiles on a mass scale.

71.     Defendant specified the criteria of potential customers that would be most profitable for Defendant to sell to after they had been robocalled.

72.     Defendant integrated its systems with its marketers, and/or was provided lead lists from its marketers, so it could access the records of people with whom they called and Defendant was otherwise provided records and data concerning the persons called.

73.     Defendant had access to the sales and customers generated by the illegal robocalling at issue in this case.

74.     The *May 2013 FCC Ruling* also clarifies circumstances under which a telemarketer has apparent authority.

75.     Defendant authorized its marketers to generate prospective customers for it.

76.     Plaintiff reasonably believed that the telemarketers who called him had received permission, authority, and instruction to conduct activity on behalf of Defendant.

77.     By accepting these leads, Defendant "manifest[ed] assent or otherwise consent[ed]… to act" on behalf of its telemarketers, as described in the Restatement (Third) of Agency.

78.    Furthermore, Defendant consented and/or provided express or implied authority to its agents to hold themselves out as Defendant's sales representatives or agents.

79.    Regardless of if Defendant directly initiated these calls, it is directly liable for its own participation and involvement in making and facilitating the calls at issue. *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 378 (4th Cir. 2013), also compare 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting the "making" of such calls), *with* 47 U.S.C. § 227(c)(5) (prohibiting the "initiating" calls).

80.    The Federal Communications Commission ("FCC") has instructed that resellers, like Defendant may contend that it is, may not avoid liability by outsourcing telemarketing. *FCC 2013 Ruling at ¶ 37"*.

81.    Third-party lead generators, like the ones that Defendant may employ or hire, make or facilitate the autodialed and prerecorded message calls described herein "on behalf of" Defendant within the meaning of the FCC's Declaratory Rulings and 47 U.S.C. § 227(c)(5).

82.    More specifically, the *FCC 2013 Ruling* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd. at ¶ 34.

### Ratification

83.    Further, Defendant ratified the unlawful calls by knowingly accepting business that originated through illegal robocalls, including the benefit of a large volume of sales.

84.    Despite being on notice of violations, Defendant continues to work with companies that perform illegal robocalling.

85.    Defendant took advantage of the violations by having its authorized salespeople solicit prospective customers while turning a blind eye to the way the potential customer was identified.

86.    Defendant endorsed the calling tactics because it was aware, or should have been aware through the exercise of reasonable diligence, that telemarketers working on their behalf, were violating the TCPA.

87.    Defendant failed to properly monitor telemarketers operating on its behalf and accepted business that originated through the illegal telemarketing calls.

88.    Defendant here cannot legally accept business derived from telemarketing, if the entities that are initiating such telephone calls that violate the TCPA in any respect, including those that do not have or adhere to valid Do Not Call policies. Pursuant to the TCPA, 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200, sellers like Defendants here are liable for noncompliant calls initiated by telemarketers on their behalf.

## CLASS ACTION ALLEGATIONS

89.    Plaintiff brings this class action under Rule 23(a),(b)(2), and(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and of a similarly situated "Class" or "Class Members" defined as:

> **Robocall Class:** All persons in the United States who, within the four (4) years prior to the filing of the original Complaint received a call from Defendants or anyone on Defendant's behalf, to said person's cellular telephone number, advertising Defendant's products or services, using an artificial or prerecorded voice or similar dialing system used to call Plaintiff, without the recipients' prior express written consent, in violation of the TCPA.

> **Do Not Call Registry Class:** All people in the United States who from four years prior to the filing of this action (1) were called by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone

number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant's claim (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.

**INTERNAL DNC CLASS:** All persons within the United States who, within the four years prior to the filing of this Complaint through the date of class certification, (1) received two or more calls within any 12-month period, (2) encouraging the purchase of Defendant's property, goods, or services, (3) to said person's residential telephone number, (4) after requesting that Defendant "stop" or making similar request.

**SELLER IDENTIFICATION CLASS:** All persons within the United States who, within the four years prior to the filing of this Complaint through the date of class certification, (1) received two or more calls within any 12-month period, (2) regarding Defendant's property, goods, and/or services, (3) to said person's residential telephone number, (4) that did not disclose the name of the individual caller, the name of the person or entity on whose behalf the call is being made, or a telephone number or address at which the person or entity may be contacted.

90.     Excluded from the Classes are Defendant, and any subsidiary or affiliate of Defendants, and the directors, officers and employees of Defendant or its subsidiaries or affiliates, and members of the federal judiciary.

91.     This action has been brought and may properly be maintained as a class action against Defendant pursuant to Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

92.     **Numerosity**: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendant's conduct consisted of standardized marketing phone calls placed to cellular telephone numbers, Plaintiff believes, at a minimum, there are greater than forty (40) Class Members.  Plaintiff believes that

the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

93.     Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendants' records, including, but not limited to Defendants calls and personnel records.

94.     Members of the Classes may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

95.     **Existence and Predominance of Common Questions of Fact and Law**: There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Class. Common questions of law and/or fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

1.  Whether Plaintiff and Class Members registered a phone number on the National Do Not Call Registry;

2.  Whether, during the class period Defendant or its agents called (other than a phone call made for emergency purposes or made with the prior consent of the called party) to a Class member using any automatic dialing system to any telephone number assigned to a cellular phone service;

3.  Whether, during the class period Defendant or its agents called (other than a phone call made for emergency purposes or made with the prior consent of the called party) to a Class member using a prerecorded message or artificial voice.

4.  Whether Defendant had "prior express consent" under the TCPA to call the cell phone numbers of Plaintiff Class Members;

5.  Whether Defendant instituted procedures for maintaining a list of persons who request not to receive telemarketing calls that met the standards set forth in 47 C.F.R. § 64.1200(d);

6.  How Defendant obtained the phone numbers of Plaintiff and Class members;

7.  Whether Defendant engaged in telemarketing content when it made the calls which are the subject of this lawsuit;

8.  Whether the calls made to Plaintiff and Class Members violate the TCPA and its regulations;

9.  Whether Defendant willfully or knowingly violated the TCPA or the rules prescribed under it;

10. Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney fees and costs for Defendant's acts and conduct;

11. Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendant from continuing to engage in its unlawful conduct; and

12. Whether Plaintiff and the Class are entitled to any other relief.

96.     One or more questions or issues of law and/or fact regarding Defendants' liability are common to all Class Members and predominate over any individual issues that may exist and may serve as a basis for class certification under Rule 23(c)(4).

20

97. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Classes. The claims of the Plaintiff and members of the Classes are based on the same legal theories and arise from the same course of conduct that violates the TCPA.

98. Plaintiff and members of the Do-Not-Call-Registry Class each received more than one phone call within a 12-month time period, which Defendant placed or caused to be placed to Plaintiff and the members of the Class.

99. **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. Plaintiff has retained counsel competent and experienced in litigation in the federal courts, TCPA litigation, and class action litigation.

100. **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendant by any member of the Class. The likelihood of the individual members of the Class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the

21

conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

101.    **Class-Wide Injunctive Relief and Rule 23(b)(2):** Moreover, as an alternative to or in addition to certification of the Class under Rule 23(b)(3), class certification is warranted under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole.  Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendant's ongoing violations of the TCPA, and to order Defendant to provide notice to them of their rights under the TCPA to statutory damages and to be free from unwanted calls.

<u>**COUNT I**</u>
<u>**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**</u>
<u>**47 U.S.C. § 227(b)**</u>
**(On Behalf of Plaintiff and the Robocall Class)**

102.    Plaintiff incorporates by reference all the allegations contained in paragraphs 1 through 101 above as though fully stated herein.

103.    It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system. . .to any telephone number assigned to a . . . cellular telephone service . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

104.    Automatic telephone dialing system refers to "equipment which has the capacity--(A) to store or produce telephone numbers to be called, using a random or sequential number

generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

105. Defendant – or third parties directed or authorized by Defendant – used equipment having the capacity to randomly or sequentially generate telephone numbers and to dial such numbers without human intervention to make non-emergency telephone calls to the cellular telephone of Plaintiff and the other members of the Class defined above.

106. Additionally, and/or alternatively, Defendant – or third parties directed by Defendant – used an artificial or prerecorded voice to deliver messages to Plaintiff and other Class Members without prior consent.

107. These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cellular phones of Plaintiff and the other members of the putative Class when its calls were made.

108. Defendant has, therefore, violated Sec. 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cellular phones of Plaintiff and the other members of the putative Class without their prior express written consent.

109. Furthermore, it is a violation of the TCPA "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior consent of the called party, unless the call is initiated for emergency purposes. . . ." 47 U.S.C. 227(b)(1)(B); 47 C.F.R. § 64.1200(a)(3).

110. The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

23

111.    As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

112.    At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

113.    Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that its conduct was a violation of the TCPA.

114.    Because Defendant knew or should have known that Plaintiff and Class Members did not give prior express consent to receive autodialed calls, the Court should treble the amount of statutory damages available to Plaintiff and members of the Putative Class pursuant to section 227(b)(3)(C) of the TCPA.

115.    Likewise, since Defendant knew or should have known that Plaintiff and Class Members did not give prior express consent to receive calls using an ATDS, the Court should treble the amount of statutory damages available to Plaintiff and members of the Putative Class pursuant to section 227(b)(3) of the TCPA.

116.    As a result of Defendant knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(C).

117.    Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class Members relief against Defendant as set forth in the Prayer for Relief below.

<u>**COUNT II**</u>
**<u>VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT – 47 U.S.C. §227</u>**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

118.    Plaintiff incorporates by reference all the allegations contained in paragraphs 1 through 101 of this Complaint as though fully stated herein.

119.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

120.    47 C.F.R. § 64.1200(e), provides that 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

121.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

122.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

123.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do No Call Registry

Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

124.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.  As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

125.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class relief against Defendant as set forth in the Prayer for Relief below.

### COUNT III
### VIOLATIONS OF 47 U.S.C. § 227 and 47 C.F.R. § 64.1200
### (On Behalf of Plaintiff and the Internal DNC Class)

126.     Plaintiff incorporates by reference all the allegations contained in paragraphs 1 through 101 of this Complaint as though fully stated herein.

127.     In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

26

**(1)** *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

**(2)** *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

**(3)** *Recording, disclosure of do-not-call requests*. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not- call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

\*          \*          \*

**(6)** *Maintenance of do-not-call lists.* A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

128.    Pursuant to 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

129.     Plaintiff and the Internal DNC Class members made requests to not to receive future text message solicitations.

130.     Defendant failed to honor Plaintiff's and the Internal DNC Class members' opt-out requests.

131.     As outlined in detail above, Defendant has violated the requirements of section 64.1200(d) by failing to (1) maintain the required written policies; (2) provide any training to their personnel engaged in telemarketing; (3) maintain an internal do- not-call list and honor consumer opt-out requests; and (4) honoring opt-out requests.

132.     Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the Internal DNC Class members are entitled to an award of $500.00 in statutory damages, for each call sent by, or an behalf of, Defendant.

133.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should treble the amount of statutory damages recoverable by the members of the Internal DNC Class.

134.     Plaintiff and the Internal DNC Class members also seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to section 227(c)(5).

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below

**COUNT IV**
**VIOLATIONS OF 47 U.S.C. § 227(c) AND 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the Seller Identification Class)**

135.     Plaintiff incorporates by reference all the allegations contained in paragraphs 1 through 101 of this Complaint as though fully stated herein.

136.    In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> **(4)** *Identification of sellers and telemarketers.* A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

137.    Pursuant to 47 C.F.R § 64.1200©, the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

138.    Defendant violated the requirements of section 64.1200(d)(4) by failing to identify (1) the name of the individual caller; (2) the name of the legal entity on whose behalf the call was being made; and (3) a telephone number or address at which Defendant may be contacted.

139.    Pursuant to section 227©(5) of the TCPA, Plaintiff and the Seller Identification Class members are entitled to an award of $500.00 in statutory damages, for each call sent by Defendant or on Defendant's behalf. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227©(5), treble the amount of statutory damages recoverable.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class relief against Defendant as set forth in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and in favor of the class, against Defendants, for:

1. An order certifying this case as a class action, certifying Plaintiff as representative of the Classes, and designating Plaintiff's counsel as Class counsel;

2. Statutory damages of $500 per call in violation of the TCPA;

3. Willful damages at $1,500 per call in violation of the TCPA;

4. Statutory damages of $500 per call in violation of the DNC provisions of the TCPA;

5. Willful damages at $1,500 per call in violation of the DNC provisions of the TCPA;

6. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii);

7. An injunction prohibiting Defendant from calling any individual whose number appears on the National Do Not Call Registry and on Defendant's internal DNC list;

8. Reasonable attorney's fees and costs; and

9. Such further and other relief as this Court deems reasonable and just under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff, DAVID ULERY, demands a trial by jury on all appropriate claims.

**Dated: February 22, 2023.**                     Respectfully Submitted,


**EGGNATZ | PASCUCCI**                     **JORDAN RICHARDS, PLLC**
7450 Griffin Road, Suite 230                     1800 SE 10th Avenue, Suite 205
Davie, Florida 33314                     Fort Lauderdale, Florida 33316
Tel: (954) 889-3359                     Tel: (954) 871-0050
*Counsel for Plaintiff*                     *Counsel for Plaintiff*

By: */s/ Joshua H. Eggnatz*                     By: */s/ Jordan Richards*
JOSHUA H. EGGNATZ, ESQUIRE                     JORDAN RICHARDS, ESQUIRE

30

Florida Bar No. 006726
(*to be admitted Pro Hac Vice*)
*JEggnatz@JusticeEarned.com*
*MPascucci@JusticeEarned.com*

Florida Bar No. 108372
*Jordan@jordanrichardspllc.com*
*Jake@jordanrichardspllc.com*