**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

**CASE NO: 1:23-cv-00490-MDB**

DAVID ULERY and THOMAS
DOUGHTY, individually and
on behalf of all others similarly situated,

      Plaintiffs,

      v.

INSURANCE SUPERMARKET, INC.
and EDM LEADS, LLC,

      Defendants.

_____/

**JOINT STATUS REPORT FOLLOWING THE**
**JANUARY 8, 2024 STATUS CONFERENCE**

Pursuant to the Court's Minutes and Order (Dkt. No. 63), the Parties submit the below Joint

Status Report Following the Status Conference held on January 8, 2024.

**I.      Status of Corporate Representative 30(b)(6) Depositions.**

ISI's Corporate Representative was deposed on January 10, 2024.

<u>EDM's Position</u>: As background for this deposition, EDM has claimed, throughout the

entire lawsuit, that ISI was mistaken when it alleged that the single call to the Plaintiff, forwarded

to ISI, was a call that went through EDM. Plaintiff has produced a recording of a call, the beginning

of which uses an artificial voice (the "Sam call"), and EDM has steadfastly denied that the Sam

call went through the EDM system (i.e., EDM contends that the Sam call was sent to ISI through

another call broker, similar to EDM, or a publisher, in which case also not through EDM). Further,

EDM knows that ISI had at least 30 additional lead providers, which are lead providers similar to

EDM, employed at the time of the call to Doughty, which was forwarded to ISI. However, during

the deposition of ISI's Corporate Representative, ISI's counsel continually instructed the deponent not to answer any questions about lead providers other than EDM that sent lead calls to ISI during or on the same day that Doughty received his phone call. EDM requests that the Court strike all of ISI's objections and require ISI's Corporate Representative to prepare for and answer all questions on all disclosed topics.

EDM's Corporate Representative was deposed on January 11, 2024. The Parties have agreed to continue the deposition to January 30, 2024 after technical difficulties outside the Parties' control caused Plaintiffs' counsel to lose internet connection to the remote, Zoom deposition before the deposition was completed.

## II.    Status of EDM's Discovery Production.

### i.    Plaintiff's position

1)    **The Ordered Scope of Discovery**: Throughout this entire litigation it was represented to Plaintiff and the Court that EDM's telemarketing relationship with ISI began in January 2022 pursuant to the ISI/EDM Master Services Agreement. Based on that representation, the Court ordered that "Plaintiffs are entitled to information concerning the call campaign for ISI, which call campaign is governed by the Master Services Agreement executed in January, 2022, and which call campaign involves ISI, EDM, and several third parties, including but not limited to WhiteMan Marketing," including Summary Call Data for all calls "*regardless of whether the calls were ultimately transferred to ISI* and regardless of which third party initiated the call." [D.E. 53].

2)    **New Information Expanding the Scope of Discovery**:

   a.    **A Prior Final Expense Live-Transfer Marketing Agreement has expanded scope of time**: ISI's corporate representative testified that EDM started performing

telemarketing for ISI prior to January 2022 pursuant to a prior telemarketing agreement.

    i. Later that night, EDM produced the prior Final Expense Live-Transfer Marketing Agreement dated April 15, 2021.

    ii. <u>EDM's position</u>: EDM's counsel was unaware of any prior contract between ISI and EDM until preparing EDM's corporate representative for its deposition, days before the deposition.

b. **<u>EDM's Final Expense Live-Transfers Campaign is not just limited to ISI</u>**: EDM's corporate representative testified that it's Call Centers and Publisher partners placed calls not just for the benefit of ISI, but also potentially for other insurance brokerages whom EDM contracted with to provide Final Expense Live-Transfers (at least 1 other). EDM testified that its software, Retreaver, can run various reports showing: 1) the call center who transferred (or attempted to transfer) a particular phone number; 2) the volume of calls and unique telephone numbers transferred by a particular call center; and 3) the insurance brokerage (ISI or otherwise) to whom the transfer was made.

    i. Because EDM has now taken the position that the calls placed may have been transferred to other insurance brokerages purchasing EDM's Final Expense Live-Transfers, summary call data, and contracts with the call centers who placed those calls, is relevant and proportionate to the claims against EDM and should be produced. Indeed, irrespective of whether a call was transferred to ISI, all calls were indisputably connected to EDM.

3

1. <u>EDM's position</u>: This lawsuit is about a single call made to Plaintiff Doughty and transferred to ISI. EDM claims that the call identified by Plaintiff Doughty was not a call that went through EDM, and that the only call to Doughty that was forwarded through EDM was a call to a number of Plaintiff Doughty that is not on the Do-Not-Call list and thus perfectly lawful. EDM forwards calls to various different insurance brokers like ISI, and Plaintiff Doughty has not alleged that he spoke to any company other than ISI. Thus, calls that were transferred to other insurance brokers are not relevant to this action. Plaintiffs are improperly attempting to expand the scope of discovery to essentially *all calls* that ever went through EDM on a final expense campaign, regardless of to whom the calls were transferred, which potentially implicates numerous third parties that have not been named in this action, and to which none of the factual allegations or alleged misconduct described in the complaint has ever been attributed. Since this information is not relevant to the claims or defenses of the action, EDM should not be required to produce this information.

c. **The Retreaver software only tracks "transferred" calls, not *all* calls placed**: Retreaver only tracks calls placed by EDM's publishers that are transferred (or attempted to transfer) to an ISI qualifying agent (a "Verifier"). If a call is not transferred to a Verifier (because the consumer does not qualify or if the call is disconnected) there is no record of that call in Retreaver.

d. **EDM's efforts to obtain *all* call data is insufficient**:

i. **EDM only requested "transferred/forwarded" calls, not *all* calls**: On January 11, 2024, the same day EDM was deposed, EDM requested from its Call Centers and Publisher partners call data relevant to Plaintiffs individually and EDM's "Final Expense" campaign. Although EDM testified that it requested call data for all calls placed, not just those transferred to an ISI Verifier, the letter EDM e-mailed to its partners demonstrates that it merely requested the same data set already produced and available in Retreaver – data for calls *transferred*, not all calls placed.

   1. Regarding the Plaintiffs individually, the letter states "we request that you search for the following phone numbers in the records of all calls made *and transferred* to EDM." For the Final Expense campaign generally, it requests "records of all calls that were made *and forwarded to EDM.*"

   2. EDM's position: The independent, third-party marketers EDM works with make calls not only for EDM, but for other brokers as well. A request that the publishers search for and provide all calls placed would necessarily include calls that were made and ultimately sent to *other brokers* (other than EDM) and advertisers other than ISI. In other words, Plaintiffs are attempting now to massively expand the data they are seeking to include calls that did not go through EDM and never had any connection to ISI whatsoever. Moreover, EDM's letter *did* request that its publishers "provide any relevant records or information associated with" "final expense insurance" campaigns for EDM.  Lastly, EDM has

no actual or legal control over any of the marketing partners from which EDM buys its marketing leads, and EDM has no contractual right to seek call records of these independent companies; this notwithstanding, EDM has requested that these third party, independent marketing companies provide records of calls that were made and transferred to EDM, regardless of whether the calls were blocked due to numbers being on the Do Not Call List. *See Moretti v. Hertz Corp.*, No. CV 14-469-LPS, 2018 WL 4693473, at *1 (D. Del. Sept. 30, 2018), citing *Gerling Int'l Ins. Co. v. C.I.R.*, 839 F.2d 131, 140 (3d Cir. 1988) ("[i]n the absence of control by a litigating corporation over documents in the physical possession of another corporation, the litigating corporation has no duty to produce.").

ii. **EDM only requested call data under a contract titled "IO & Marketing Agreement"**: Because EDM's Call Centers and Publisher partners transferred "Final Expense" calls to EDM for ISI and other insurance brokers, it must request all calls made in connection with an EDM Final Expense campaign to ensure that all relevant data is captured.

1. EDM's position: The relevant contracts between EDM and its publishers are titled "IO & Marketing Agreement." EDM does not enter into contracts with its publishers under any other name. Moreover, any calls made by publishers that were not transferred to ISI or attempted to be transferred to ISI are not relevant, as they are not part of the ISI Campaign as previously defined by the Court (nor any expanded time-frame for the same).

    iii. **EDM's should be ordered to request all calls, including calls that were disconnected because the consumer did not qualify, because the consumer hung-up, or because they were placed to DNC registered numbers or blacklisted numbers**: The letter should specifically request that its publishers preserve and produce all Call Details for all calls placed, including for those that were disconnected for any reason.

        1. In EDM's requests to the third party, independent marketers sending leads to EDM, EDM asked for all data for calls transferred, without stating that the transfer had to be successful.

        iv. "Call Details" refers to detailed information on a particular inbound or outbound telephone call, including, as available, the telephone number placing the call (including area code); the telephone number receiving the call, the name or "Caller ID" of the call; the date of the call; the time of the call; and the name of the person being called.

        1. EDM's position: EDM's letter already requested that its publishers "any relevant records or information associated with" "final expense insurance" campaigns for EDM. EDM will retain this information if and when provided by its publishers; however, Plaintiffs are *not* entitled to *any information other* than **summary call data** at this time.

  v. **EDM should be ordered to request all Call Details within 10-days and provide a Status Report within 14-days of sending that letter**.

        1. EDM's Position: EDM has complied with the court's order and produced all call data available. Additionally, EDM has asked all of the

third-party, independent marketing companies to provide call data/call details regarding all final expense campaign calls transferred (successfully or not) to EDM (notwithstanding the fact that many of these calls were not ultimately transferred to *ISI*); however, EDM does not control these companies and has no contractual right to obtain this information.

e. **EDM's production of ESI in its actual possession is insufficient and must be supplemented**:

    i. **All Summary Data for EDM's Warm Final Expense Live-Transfers Campaign**: EDM should be ordered to run reports in Retreaver for all calls placed in connection with its Final Expense campaign within the Class Period, irrespective of which insurance brokerage the call was ultimately transferred to. Retreaver is capable of querying and running reports specific to the Final Expense campaign, including by publisher and Insurance Brokerage.

        1. EDM's position: EDM has fully complied with Court's order and produced a screenshot showing summary call data for all calls transferred to ISI from January 28, 2022 to the date that this information was queried. Given that EDM and ISI had a relationship under a prior contract, i.e., before the MSA entered into between ISI and EDM on January 28, 2022, EDM agrees to query the information from the date of the first contract through the present. However, information about calls transferred to *other* insurance brokerages *other than ISI* is not relevant to this action, as any other insurance brokerages are not parties to this lawsuit.

Plaintiffs are attempting to drastically expand the scope of relevant discovery that the Court has already set, while they themselves on the other hand, in responding to EDM's discovery requests, drastically *limit* "relevant" data. EDM served specific requests to Plaintiff Doughty seeking information and documents about EDM's defenses, including its defense that it did not forward a call, made to Mr. Doughty, that included an artificial voice, i.e., facts that Mr. Doughty received other calls, his recordings of other calls, etc. To that end, EDM served specific discovery requests on Mr. Doughty, such as unredacted copies of all phone records and/or call logs for all of his phone numbers for the date January 7, 2023. As one example, in response to EDM's request for "unredacted copies of ALL phone records and/or call logs for ALL of YOUR phone numbers for the date January 7, 2023," Plaintiff Doughty responded: "Objection. This request is overbroad in scope and not proportionate to the claims or defenses raised by EDM. Defendant EDM contends that it[1] only placed a single call to Plaintiff Doughty's telephone number (254) 294-5788. Defendants deny they called Doughty at any other time or placed a call to any other number. Based on this objection, Plaintiff" *limited* his response. Notably, Mr. Doughty still has not produced *any* call records, e.g., from a cellular service provider, for his non-DNC phone number, which is the *only* phone number at which he claims he has *any* evidence linking that call to ISI, and through ISI to EDM based on ISI's representations.

---

[1] EDM has always denied that it "made" or "placed" *any* phone calls. Doughty's factual attribution to EDM in his objection is incorrect.

ii. **Summary data for disconnected DNC/Internal DNC ("Blacklisted") calls was not produced**: Attempted transfers of DNC and Internal DNC/Blacklisted numbers are capable of being queried and produced. Summary Data for this data set was not produced. It should be ordered to be produced.

1. EDM's position: EDM produced summary data including a redacted list of phone numbers which were attempted to be sent to EDM but were blocked by a software provider EDM uses to prevent calls that are on the DNC, i.e., Blacklist Alliance. EDM has produced this data. However, it is impossible to determine how many of the blocked calls were for the "final expense" campaigns, or to which insurance broker they would have ultimately been transferred if they had not been blocked.

iii. **Recording of Doughty's non-DNC call in EDM's Retreaver Account**: EDM's Retreaver data evidences a 12 minute, 28 second call recording of EDM's call to Doughty that was not produced. A screen shot of the software shows a "PLAY" button to hear the recording. EDM testified that this is a recording of Doughty's call from the time it was transferred to the ISI Verifier, through the time that ISI accepted the lead and started obtaining PII and other confidential information. This recording is crucial evidence because EDM has taken the position that it transferred a different call to ISI other than the call recording produced by Doughty that matches the call recording produced by ISI. If the recording in Retreaver matches that of Doughty's and ISI's it will

undermine EDM's defense and support Plaintiff's claim that the call was transferred by EDM.

1. EDM's position: Plaintiffs misstate EDM's testimony from its deposition. EDM has represented that it does not, nor has it ever, had access to any recordings of what transpires on calls prior to when they are transferred to ISI.

2. As an additional matter, the Court's order did not require EDM to produce call recordings. D.E. No. 53.

3) **Proposal for Obtaining the Ordered Discovery:** EDM should be ordered to send a revised letter clarifying the specific Call Details being requested for the Plaintiff's individually and the putative class within 10-days and provide a Status Report within 14-days of sending that letter regarding the data it has obtained.

   a. The parties shall confer regarding the language of the revised letter before it is sent out. If the parties cannot agree on the language of the letter within 7-days, they shall advise the court that a hearing is necessary.

   b. EDM's Position: It makes no sense to ask multiple third-party, independent marketing companies for records of calls that were made but transferred to companies other than EDM. This information has nothing to do with EDM or ISI, and EDM has no control over this data or the companies that possess this data.

4) **Evidentiary Hearing**: Plaintiffs defer to the Court as to whether an evidentiary hearing is required at this point in time. Plaintiffs submit that it may be more efficient to reserve ruling on an evidentiary hearing pending EDM's Status Report regarding its collection

efforts.  If an evidentiary is ordered, Plaintiffs counsel would like the opportunity to cross-examine EDM's corporate representative.

    a.  Plaintiff states a non-evidentiary hearing may assist the Court in resolving the issues set forth in this Status Report.

    b.  <u>EDM's position</u>: EDM agrees that postponing any potential evidentiary hearing is the best use of the Court's and the Parties' resources at this time. EDM agrees that a non-evidentiary hearing will be valuable on the topic of Plaintiff's failure to produce documents (e.g. phone records), and ISI's refusal to testify about lead providers other than EDM.

**Dated: January 16, 2024.**            Respectfully Submitted,

| | |
|---|---|
| **EGGNATZ \| PASCUCCI** | **JORDAN RICHARDS, PLLC** |
| 7450 Griffin Road, Suite 230 | 1800 SE 10th Avenue, Suite 205 |
| Davie, Florida 33314 | Fort Lauderdale, Florida 33316 |
| Tel: (954) 889-3359 | Tel: (954) 871-0050 |
| *Counsel for Plaintiff* | *Counsel for Plaintiff* |
| | |
| By: */s/ Joshua H. Eggnatz* | By: */s/ Jordan Richards* |
| JOSHUA H. EGGNATZ, ESQUIRE | JORDAN RICHARDS, ESQUIRE |
| Florida Bar No. 006726 | Florida Bar No. 108372 |
| (*to be admitted Pro Hac Vice*) | *Jordan@jordanrichardspllc.com* |
| *JEggnatz@JusticeEarned.com* | |
| *MPascucci@JusticeEarned.com* | |

By: *<u>/s/ Chris R. Miltenberger</u>*
Chris R. Miltenberger
Texas State Bar Number 14171200
The Law Office of Chris R. Miltenberger, PLLC
1360 N. White Chapel, Suite 200
Southlake, Texas 76092
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com

**<u>CERTIFICATE OF SERVICE</u>**

12

**I HEREBY CERTIFY** that the foregoing document was served on January 16, 2024 on all counsel of record:

*/s/ Joshua H. Eggnatz*

### SERVICE LIST

Amanda A. Simpson
390 N. Orange Avenue, Suite 1285
Orlando, Florida 32801
Telephone: (407) 246-8440
Amanda.Simpson@jacksonlewis.com

Jessica S. Reed-Baum
950 17th Street, Suite 2600
Denver, Colorado 80202
Telephone: (303) 892-0404
Jessica.Reed-Baum@jacksonlewis.com

*Counsel for Defendant, Insurance Supermarket, Inc.*

Karl S. Kronenberger
KRONENBERGER ROSENFELD, LLP
150 Post Street, Ste 520
San Francisco, CA 94108
Phone: (415) 955-1155 Ext. 114
karl@kr.law

*Counsel for Defendant EDM Leads*